UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERICA MARILYN S.,[1] | Case No. 4:20-cv-00481-CWD |
| Petitioner, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[2] | |
| Respondent. | |

## INTRODUCTION

Petitioner brought this matter for judicial review of Respondent's denial of her application for supplemental security income. (Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record (AR). For the reasons set forth below, the Court will remand this matter to the Commissioner for further proceedings consistent with the Court's analysis.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

On August 6, 2018, Petitioner protectively filed an application for supplemental security income under Title XVI of the Social Security Act. She alleges disability beginning January 1, 2007, but amended her onset date at the time of the hearing to August 6, 2018, the date the application was filed. (AR 15.) Petitioner's application was denied upon initial review and on reconsideration. (AR 15.) A hearing was conducted before Administrative Law Judge (ALJ) Christel Ambuehl on February 26, 2020, at which the ALJ took testimony from Petitioner and a vocational expert. (AR 15.)

On March 27, 2020, the ALJ issued a written decision finding Petitioner was not under a disability from August 6, 2018, through the date of the written decision, and therefore found Petitioner is not disabled. (AR 23.) Petitioner timely requested review by the Appeals Council, which denied her request on April 23, 2020. (AR 1 – 6.)

Petitioner timely appealed this final decision to the Court on October 12, 2020. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g). At the time of the alleged amended disability onset date of August 6, 2018, Petitioner was forty-six years of age. (AR 22.) Petitioner obtained her GED and has no past relevant work.  (AR 22.)

At step two of the sequential process,[3] the ALJ determined Petitioner suffers from a medically determinable severe impairment of scoliosis. (AR 17.) At step three, the ALJ determined that Petitioner did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (AR 17 - 18.) The ALJ next determined Petitioner retained the residual functional capacity for sedentary work, as defined in 20 C.F.R. § 416.967(a), with the following additional postural limitations and restrictions: lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand or walk for 2 hours of an 8-hour workday and sit for 6 hours of an 8-hour workday; no limitations on push or pull except as limited for lift and carry; frequently balance, never stoop, occasionally kneel and crouch, never crawl, occasionally climb ramps and stairs, and never climb ropes, ladders or scaffolds; occasional exposure to weather, extreme cold, and vibration; and no exposure to hazards.[4] With such an RFC, the ALJ determined  Petitioner retained the ability to perform the requirements of representative

---

[3] For a summary of the process, *see Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) ("The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id*. § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id*. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)-(v).").

[4] Sedentary work requires the ability to lift no more than 10 pounds at a time, with periods of standing or walking totaling no more than 2 hours of an 8-hour workday, and sitting for a total of approximately 6 hours of an 8-hour workday. SSR 83-10; SSR 96-9p; 20 C.F.R. § 416.967(a).

**MEMORANDUM DECISION AND ORDER - 3**

occupations at the sedentary exertion level such as document preparer, call out operator, and surveillance system monitor. (AR 23, 49.)

## ISSUES FOR REVIEW

1.   Whether the ALJ reasonably evaluated Petitioner's subjective symptom testimony?

2.   Whether the ALJ reasonably evaluated the medical opinion evidence?

3.   Whether the ALJ's Residual Functional Capacity determination is supported by substantial evidence?

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision, unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id*.

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id*.

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.

1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id.*

Petitioner's assignments of error challenge the ALJ's step four findings regarding her RFC, and the ALJ's step five conclusion that there are other jobs that exist in significant numbers in the United States that Petitioner can still perform. The Court finds Petitioner's arguments persuasive, as explained below.

## DISCUSSION

At step four of the sequential evaluation, the ALJ is required to make factual findings regarding: (1) the claimant's RFC; (2) the physical and mental demands of the claimant's former employment; and (3) whether the claimant's RFC permits her to return to previous occupations. Social Security Ruling (SSR) 82–62, 1982 WL 31386 (1982).

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The assessment of a claimant's RFC must be "based on all the relevant evidence in [the claimant's] case record." *Id. See also Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). When a claimant requests an administrative hearing, it is the duty of the ALJ to determine the claimant's RFC from the record. 20 C.F.R. § 404.1546(c). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity," and the ALJ's findings of RFC need not correspond precisely to any physician's findings. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir.2001). It is the claimant who bears the burden of proof of establishing his or her RFC. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

Here, Petitioner contends that there is insufficient evidence to support the ALJ'S finding that she can perform sedentary work as defined in 20 C.F.R. § 416.967(a) and Social Security Ruling (SSR) 83–10, without significant interruption from pain.

## 1.   Subjective Symptom Testimony

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Trevizo*, 871 F.3d at 678 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); 20 C.F.R. § 404.1529 (Mar. 27, 2017)). When doing so, "the claimant need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; [s]he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's

testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 345, at 345-46 (9th Cir. 1991)).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all of the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029 at *1-2.[5] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

---

[5] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo*, 871 F.3d at 679 n.5.

**MEMORANDUM DECISION AND ORDER - 7**

Here, the ALJ considered Petitioner's subjective symptom testimony concerning her physical impairments, finding her testimony did not substantiate her subjective complaints of disabling limitations. The ALJ concluded that, although Petitioner's medically determinable impairment could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with: (1) Petitioner's limited treatment history between the amended onset date of August 6, 2018, until January of 2020; (2) Petitioner's daily activities; and (3) the findings of the consultative medical examiner. (AR 18 – 19.) As explained below, the Court finds the ALJ's reasons are not specific, legitimate reasons supported by substantial evidence.

### A.    Petitioner's Medical History

Petitioner has scoliosis with approximately 50 degrees curvature both rightward and leftward. (AR 275.) On September 17, 2015, Dr. Andrew Dailey performed extensive surgery to correct Petitioner's spinal curvature, consisting of a T4 to ilium posterior instrumented fusion, bilateral complete facetectomies at L1-L2, L2-L3, and L3-L4, and Smith-Petersen osteotomies at T7-T8, T9-T10, T10-T11, and T11-T12. (AR 275, 351.) Numerous screws and other hardware were placed, including two titanium alloy 500mm rods extending over the entire thoracic spine on the right and left sides. (AR 37, 353.) Thereafter, Petitioner was prescribed opioid painkillers. Over the course of 2016, her opioid use was monitored by her provider, Dr. Jill Sindt, and she was instructed to wean off opioids. (AR 275.)

On June 16, 2018, Petitioner testified she was injured during a domestic violence

incident when her husband pushed her and "landed on top of [her]." (AR 37-38.)
Diagnostic x-rays of the thoracic and lumbar spine taken on October 11, 2018, showed
evidence of hardware fracture in the posterior fusion rod at L4-L5 on the right, possible
loosening of the right trans SI joint screw in the sacral segment, fracture of the proximal
1/3 of the left trans SI joint screw, and possible loosening of the left trans SI joint screw
as well as the L3 pedicle screws. (AR 687 - 690.) These findings were new when
compared with a 2016 radiograph series. (AR 687 – 690.)

Diagnostic x-rays taken on January 18, 2020, in the emergency department[6]
confirmed a right spinal rod fracture at L5-S1, a left spinal rod fracture at L1-L2, and a
left sacroiliac screw fracture. (AR 772.) On January 24, 2020, Petitioner sought care from
the emergency department for pain. (AR 813 – 814.) The attending physician noted that
the "broken screw at the left SI joint…is likely the cause of her intermittent severe pains.
She will follow-up with a spine surgeon as scheduled." (AR 814.) On January 29, 2020,
Petitioner sought care at Sterling Urgent Care complaining of back pain, which Petitioner
described as "sharp shooting pain up spine and down the back," "10/10 when moving."
(AR 797.) She was described by the physician as "ABNORMAL: appears to be in
moderate pain." (AR 797.)

## B.    Limited Medical Treatment

The ALJ discredited Petitioner's statements about the intensity and limiting effects

---

[6] Petitioner sought care from the emergency department after slipping and falling, complaining of
worsening pain and expressing concern that "she may have messed up some hardware." (AR 758.)

of her pain on the grounds that she failed to seek treatment for her back pain between her

application date of August 6, 2018, until she presented to the emergency room for

evaluation of her pain on January 18, 2020. Although the ALJ acknowledged Petitioner

did not have insurance or the means to pay for treatment until 2020, the ALJ faults

Petitioner for failing to seek free or low cost community care. (AR 20.) The ALJ notes

also that Petitioner did not take pain medication. (AR 20.)

Petitioner testified that, after the domestic violence incident in June of 2018, she

was living in her car and had no money or insurance. (AR 38.) An adult function report

completed by Petitioner on September 6, 2018, indicates that she was "getting kicked

out" of the house where she lived. (AR 196.) She eventually moved in with her

daughter.[7] Petitioner testified that, on January 1, 2020, she was able to get Medicaid as a

result of Idaho's expansion of Medicaid coverage, and she sought treatment at the

emergency department for her back pain on January 18, 2020, and January 24, 2020, and

at an urgent care facility on January 29, 2020. (AR 746, 812.) The urgent care facility

prescribed Norco, methocarbamol, and Tramadol, and the provider referred Petitioner to

other treatment providers for pain control. (AR 798.) Prior to obtaining care in January of

2020, Petitioner testified that she was "barely surviving" with the pain. (AR 45.) There is

evidence also in the record that, when Petitioner attempted to seek treatment for pain on

October 11, 2017, she cancelled her appointment due to an inability to afford the $150.00

---

[7] At the February 2020 hearing, Petitioner testified she was living with her daughter. (AR 46.) The record does not reflect when Petitioner moved in with her daughter.

**MEMORANDUM DECISION AND ORDER - 10**

payment toward her visit. (AR 272.) Petitioner testified that she anticipated surgery to replace the broken hardware. (AR 40.)

An ALJ may appropriately consider treatment history, or lack thereof, in evaluating a petitioner's symptom statements. SSR 16-3p at 6-7 (The Commissioner recommends assessing records of medications, treatments and methods used to alleviate symptoms as well as medical source opinions and reports regarding claimant's treatment and responses to treatment.). "[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). However, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Id*. (quoting *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)).

The regulations require an ALJ to consider possible reasons a claimant may provide for not complying with treatment or seeking treatment consistent with the severity of her complaints. *See* SSR 16-3p. Inability to afford treatment or access low-cost medical services can be a legitimate reason for not seeking medical treatment. *See* SSR 16-3p; *Trevizo*, 871 F.3d at 681 (9th Cir. 2017); *see also Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999) ("Although we have held that 'an unexplained, or inadequately explained failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony,' we have proscribed the rejection of a claimant's complaint for lack of treatment when the record establishes that the claimant could not afford it").

**MEMORANDUM DECISION AND ORDER - 11**

The Court finds the ALJ erred in his consideration of Petitioner's limited treatment history when assessing her symptoms. *Axtman v. Saul*, No. 2:19-CV-00194-CWD, 2020 WL 5801500, at *8 (D. Idaho Sept. 29, 2020). Consistent with the Court's holding in *Axtman,* the ALJ's speculation regarding whether Petitioner could have sought or was eligible for free or low-cost health care has no basis in the record. *Id.* (finding error when the ALJ reasoned the petitioner's failure to seek out low-cost health insurance undercut his testimony about the severity of his symptoms). Despite Petitioner's testimony that she could not afford treatment and had no health insurance coverage, the ALJ erroneously concluded Petitioner's failure to seek low-cost treatment options was inconsistent with the alleged severity of her impairments. *Id.*[8]

The ALJ also discredited Petitioner on the ground that she was not on any medication other than over the counter pain relievers prior to January of 2020. (AR 20, 21.) The ALJ cited the statement recorded in Petitioner's chart notes from January 29, 2020, that Petitioner "usually does not need medications," to discredit her symptom testimony. (AR 20, 799.)

A claimant's subjective symptom testimony may be undermined by "an unexplained, or inadequately explained, failure to...follow a prescribed course of treatment. While there are any number of good reasons for not doing so, a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable,

---

[8] The ALJ did not discuss the significance, if any, of Petitioner's emergency department care sought on July 26, 2018, after the domestic violence incident but before the amended onset date. (AR 774.) The emergency department records indicate Petitioner sought care for a laceration on her left lower extremity and there is no record of complaints of back pain. (AR 774 – 786.)

can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citations omitted).

Petitioner contends the ALJ's reason for discrediting her testimony on this ground is not valid. The record reflects various reasons Petitioner did not take prescription pain medication. For instance, the ALJ did not comment on the evidence in the record that, after Petitioner's surgery in September of 2015, she was prescribed opioids and, throughout 2016, she was instructed to wean off of them. (AR 275.) At that time, she was prescribed Oxycodone, Tizanidine, and Ibuprofen. (AR 275.) Records also reflect that, after her surgery, Petitioner at times struggled with pain control and often took more than the prescribed quantity of medications, asked for refills prior to the expiration of her prescription, and that Petitioner described being in pain. (AR 273 – 274.)[9] Petitioner's treating provider noted on October 18, 2016, that she would no longer be prescribing Percocet for Petitioner. (AR 273.) In other words, Petitioner had no alternative other than over the counter medication if her prescribing physician would no longer prescribe narcotic pain killers.

In her adult function report completed on September 6, 2018, and her medication list completed on August 29, 2018, Petitioner reported she was not taking prescribed medications and was taking ibuprofen for pain. (AR 192, 197.) At the hearing, Petitioner confirmed she had not been taking prescribed pain medications after 2017 and prior to

---

[9] Treatment records between August 18, 2016, and October 18, 2017, reflect Petitioner requested refills, and often took more than the prescribed amount of medication. The records reflect also that her providers were instructing her to "de-tox," and they ultimately refused to prescribe further opioid medication. (AR 273.)

January of 2020, and testified that it was difficult to focus or concentrate because of the pain. (AR 44 – 45.) When she sought care in the emergency department on January 18, 2020, she was given Toradol and orphenadrine, and discharged with a prescription for hydrocodone-acetaminophen for pain and methocarbamol for muscle spasms. (AR 762, 767.) She was later given a short term prescription for Norco and methocarbamol on January 29, 2020, as well as a prescription for Tramadol 50 mg 1 tablet twice a day for 60 days, and directed to follow up with a pain specialist. (AR 798, 801.)

The ALJ did not address the evidence in the record that Petitioner lacked the funds necessary to seek further treatment; her treating provider refused to prescribe opioid pain medication after October of 2016; and that, as soon as she was financially able to seek care, she was immediately given and prescribed narcotic pain medication. Further, the evidence from Petitioner's 2018 function report, which the Court will discuss in more detail below, suggests Petitioner managed her pain by limiting her activities and laying down between them. (AR 197.)

The Court therefore finds the ALJ's weighting of Petitioner's limited treatment history and failure to take medication other than over the counter medication was erroneous on this record. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment.").

C.    **Daily Activities**

The ALJ considered Petitioner's daily activities, citing her adult function report completed on September 6, 2018, and her hearing testimony. (AR 18, 19.) She concluded that the record supports "claimant could perform a range of sedentary work," without any analysis to support the statement. However, the ALJ later noted that Petitioner "lives alone," and that, despite her broken hardware, she is able to do "her basic activities of daily living such as preparing, [sic] meals and light housework. She shops and attends church." (AR 20.) The ALJ apparently considered this evidence of Petitioner's daily activities undercut her allegations of disabling pain. Petitioner contends the ALJ mischaracterized her testimony, while Respondent argues the ALJ properly relied upon Petitioner's function report from 2018 to discredit Petitioner's hearing testimony.

Petitioner reported in her 2018 function report that, from the time she wakes up, she is able to dress herself, take her dog out, and make lunch, which consists of a sandwich, soup, a smoothie, or a frozen dinner. (AR 197 – 198.) In between these activities, Petitioner reported laying down and doing nothing else. (AR 197.) She reported making only one meal a day for herself, and that it was difficult to dress, bathe, care for her hair, shave, feed herself, and use the toilet. (AR 197.) She reported being able to do light housework, such as cleaning, laundry, and weeding the flower beds outside, but that it took her a long time because she had to keep stopping due to pain. (AR 198.) She shopped in stores for food and household items twice a month, and attended church. (AR 199, 200.) Although at that time she reportedly lived alone, she was being "kicked out," and she testified at the hearing that she lived in her car for a year, but was then

living with her daughter. (AR 37, 46.)[10]

The Court does not agree with Respondent or the ALJ that Petitioner's testimony at the hearing in 2020 about her daily activities contradicts the statements she made on her function report in 2018. Rather, Petitioner testified her pain symptoms worsened since September of 2018, and that it was hard to walk, sleep, or care for herself during the day. (AR 40 – 41, 47 – 48.) She testified that she spends approximately six hours during each day lying flat on her back to relive pain, and that it is difficult to sit in one position for longer than 20 minutes before needing to adjust herself, which she needed to do during the hearing. (AR 41.) Because of the rods in her back, she testified she cannot bend but has to stoop down while holding onto something, and that it is difficult to rise from a kneeling position. (AR 42 – 43.)

She testified that she is unable to take Ibuprofen more than four days each week based upon medical advice, and that she currently is prescribed Hydrocodone and Gabapentin daily for pain control. (AR 44.) Prior to being able to see a physician and obtain prescription pain medication in 2020, she testified that she was "barely surviving," had trouble focusing and concentrating due to pain, and that moving (whether walking or reaching) caused pain. (AR 45 – 46, 47.) She testified that she does no chores other than sitting and trying to fold laundry, and that her daughter takes care of other chores. (AR 46.)

---

[10] The record does not reflect when Petitioner moved in with her daughter, when she was kicked out of her home, or precisely when she was forced to live in her car. There is a lack of clarity in the record concerning when she moved out, because she testified that she lived in her car in 2016, before the domestic violence incident in 2018, but also that she left her husband in 2016. (AR 36 – 38.)

Respondent argues the Court should uphold the ALJ's adverse symptom testimony findings on the grounds that Petitioner's testimony at the hearing contradicts her written function report. Resp. Brief at 7. (Dkt. 26-1.) However, that is to be expected given Petitioner's testimony that her pain, and her physical capabilities, allegedly worsened since 2018. This is not, therefore, a situation where there is a conflict in the evidence, as Respondent contends. *See, e.g., Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1201 (9th Cir. 2008) ("statements must be read in context of the overall diagnostic picture….").

Moreover, the ALJ limited her consideration of Petitioner's daily activities to those in 2018, finding them incompatible with Petitioner's purported claim of disability. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). But daily activities may be "grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989)).

Upon review of Petitioner's 2018 function report, there is no indication that the limited activities Petitioner engaged in either comprised a "substantial" portion of Petitioner's day, or were "transferable" to a work environment. *Id.*; *see also Ghanim*, 763 F.3d at 1165 (finding that engaging in basic chores and attending occasional social events did not undermine the claimant's testimony of disabling impairments); *Smolen*, 80 F.3d at 1284 n. 7 (recognizing that "many home activities may not be easily transferable to a work environment"). Rather, the daily activities Petitioner described being able to do in

**MEMORANDUM DECISION AND ORDER - 17**

2018 were limited to self-care, and punctuated by periods of rest. Her trips to the store and to church were not daily occurrences. And, while she may have lived alone at that time, she no longer did and required assistance from her daughter, consistent with her testimony that her pain worsened.

Accordingly, the Court finds the ALJ's second reason for finding Petitioner's symptom testimony unreliable is not supported by substantial evidence in the record as a whole.

### D.      Inconsistency with Medical Evidence

The ALJ's final reason for finding Petitioner's subjective symptoms not as severe as alleged was inconsistency with the consultative examination results noted by Dr. Boge. (AR 20.) The ALJ noted that Dr. Boge, who examined Petitioner on October 1, 2018, at the request of the Disability Determinations Services Division, recorded that his physical examination did not reveal any gross motor or neurological deficits; Petitioner walked without an antalgic gait; and she had 5/5 strength in her upper and lower extremities. (AR 20, 680 – 683.)

Respondent contends Petitioner did not "directly" challenge this reason for discounting her allegations, and has therefore forfeited the issue. Resp. Brief at 6. (Dkt. 26-1.) Further, Respondent argues substantial evidence supports the ALJ's determination. The Court finds Petitioner did not forfeit this issue, because she addressed it in the context of the ALJ's evaluation of Dr. Boge's opinions. Pet. Mot. at 14 – 15. (Dkt. 24.) Petitioner contends that Dr. Boge's findings were not inconsistent with Petitioner's reports of pain, because he recorded also that Petitioner's gait was "relatively slow," she

exhibited pain upon sitting, and he found lateral flexion at 0-5 out of 25 and 0-10 for flexion extension. (AR 680 – 686.)

The ALJ cannot simply pick isolated findings from the consultative examination notes to support a conclusion that Petitioner's impairments do not seriously impact her ability to function in the workplace. *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). Rather, Petitioner's medical records must be viewed as a whole, and in light of the overall diagnostic record. *Holohan*, 246 F.3d at 1205 (citing *Kellough v. Heckler*, 785 F.2d 1147, 1153 (4th Cir.1986) ("'Feels well' and 'normal activity' must be read in context; the claimant has established that she suffered a severe cardiac impairment in 1975. A note entered in November 1975, just one month before she was hospitalized for open heart surgery, also stated that she 'feels well.' Kellough testified without contradiction that her 'normal activity' following her surgery was very limited.").

The ALJ fails to explain why Dr. Boge's observations and findings of a nonantalgic gait, intact strength, and the absence of motor or neurological deficits somehow discredits Petitioner's complaints of pain and the effect pain has on her ability to sustain the requirements of full-time competitive employment. At the conclusion of the examination, Dr. Boge ordered diagnostic x-rays because of his concern with regard to the domestic violence incident in June of 2018, and Petitioner's reports of pain, as well as evidence of pain upon examination. (AR 691.) In other words, Dr. Boge did not find Petitioner's pain to be overstated on the basis of the isolated findings the ALJ chose to rely upon.

Further, Dr. Boge's examination results document objective manifestations of

Petitioner's pain. For instance, Dr. Boge notes deep tendon reflexes at the knees are absent, and "trace" at the ankles. (AR 681.) Petitioner complained of pain on supine straight leg raise relieved by flexion of the knees. (AR 682.) She required assistance to return to an upright siting position. (AR 682.) Petitioner complained of pain on palpation of the lower cervical and upper thoracic area, and Dr. Boge expressed some concern relative to the intactness of the upper portion of the surgical fusion. (AR 682.) She required assistance to balance during a heel-and-toe raise and heel-toe walk, which she could perform with short, slow steps. (AR 682.) She exhibited "intense" station sitting and station standing "is very rigid." (AR 682.) Dr. Boge described her gait as "relatively slow" without evidence suggestive of antalgia. (AR 682.)

X-rays confirmed the presence of fractured hardware. (AR 688 - 689.) In his supplemental report, completed on October 15, 2018, Dr. Boge indicates that the diagnostic x-rays "reinforce my conclusions under the physical concluding statement" in the report of October 1, 2018. (AR 691.) In other words, the source of Petitioner's pain and limitations were directly related to Petitioner's fractured hardware, and Dr. Boge did not offer any opinion in his report that the three findings the ALJ chose to rely upon somehow discredited Petitioner's reports of pain.

The Court cannot confidently conclude that, when read in full and in context, Dr. Boge's examination findings support the ALJ's conclusion that Petitioner's pain was not as severe as alleged. In sum, therefore, the Court cannot sustain the ALJ's adverse findings regarding Petitioner's subjective symptom testimony on the record before it.

**MEMORANDUM DECISION AND ORDER - 20**

2.    **Medical Opinion Evidence**

Petitioner contends the ALJ failed to properly evaluate the medical opinions of Dr.

Boge, the consultative medical examiner. Based upon his examination findings, partially

summarized above, Dr. Boge expressed his opinions as follows:

| | |
|---|---|
| Sitting: | Sustained basis: 30 minutes for an accumulative four hours per eight-hour day. Exertional level: sedentary, up to ten pounds occasionally, less than ten pounds INfrequently. Frequency: as noted. Work level: sedentary, up to ten pounds occasionally, less than ten pounds INfrequently. |
| Standing: | Sustained basis: 15 minutes per episode with a total of no more than four hours per eight-hour period. Exertional level: sedentary, up to ten pounds occasionally, less than ten pounds INfrequently. Frequency: as noted. Work level: sedentary, up to ten pounds occasionally, less than ten pounds INfrequently. |
| Walking: | Sustained basis: 15 minutes per episode with a total of no more than four hours per eight-hour period. Exertional level: sedentary, up to ten pounds occasionally, less than ten pounds INfrequently. Frequency: as noted. Work level: sedentary, up to ten pounds occasionally, less than ten pounds INfrequently. |
| Lifting: | No more than ten pounds very infrequently. Frequency as noted. Work level: sedentary, less than ten pounds very infrequently. |
| Carrying: | No more than ten pounds very infrequently. Frequency as noted. Work level: sedentary, less than ten pounds very infrequently. |

(AR 683.)

The ALJ provides four reasons for finding Dr. Boge's opinions unpersuasive and

inconsistent, both internally and with the overall record. First, the ALJ did not find Dr.

Boge's opinion regarding ability to work at the sedentary level "persuasive," because Dr.

Boge "did not support his opinion." Second, the ALJ found Dr. Boge's opinion internally

inconsistent because he expressed the opinion Petitioner could work at the sedentary

exertion level, yet found she could lift and carry no more than 10 pounds only very

infrequently and stand/walk combined up to four hours in a workday. (AR 21.) Third, the

ALJ determined that Dr. Boge's limitation on sitting was inconsistent with Dr. Boge's

examination notes that indicated Petitioner had no difficulty while seated, 5/5 strength,

and is able to walk without antalgia. Last, the ALJ found Dr. Boge's opinion inconsistent with the overall record, citing to the same reasons she used to discredit Petitioner's subjective symptom testimony. (AR 21 – 22.) Petitioner contends the ALJ's reasons for finding Dr. Boge's opinions unpersuasive are not supported by the evidence in the record, and that the ALJ failed to examine the record as a whole.

## A.    Legal Standard

The Commissioner revised the regulations applicable to the evaluation of medical evidence for disability applications filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). The new regulations changed how the Commissioner evaluates medical opinions and prior administrative medical findings by eliminating the use of the term "treating source" as well as what is customarily known as the treating source or treating physician rule. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the regulations now provide that the Commissioner "will not defer or give any specific evidentiary weight ... to any medical opinion(s)...including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Under the revised regulations, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources according to the following factors: supportability; consistency; relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examinations); specialization; and other factors such as the medical source's familiarity

**MEMORANDUM DECISION AND ORDER - 22**

with other evidence in the record or with disability program requirements. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The ALJ's duty to articulate a rational for each factor varies. 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

Supportability and consistency are the most important factors and, therefore, the ALJ must explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The supportability factor looks inward at the medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)…, the more persuasive the medical opinions…will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion(s)…is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)…will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

The ALJ need only address the remining factors - treatment relationship, specialization, and any other factors - when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. §§ 404.1520c(b)(2)-(3); 416.920c(b)(2)-(3) (Where "two or more medical opinions…about the same issue are both equally well-supported…and consistent with the record…but are not exactly the same."). The ALJ may address multiple opinions from a single medical source in one analysis. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1) (explaining that "voluminous case records" necessitate source-level articulation).

**MEMORANDUM DECISION AND ORDER - 23**

Because Petitioner's application was filed after March 27, 2017, the application is subject to the revised regulations. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005); *see, e.g., Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld unless 'they exceeded the Secretary's authority [or] are arbitrary and capricious.'"). Accordingly, the Court applies the revised regulations here.

Under the revised regulations, the ALJ is required to "articulate ... how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Carmen Claudia S. v. Saul*, 2021 WL 2920614, at *8 (C.D. Cal. July 9, 2021) (quoting *Robert S. v. Saul*, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021)). "In sum, the Commissioner must explain his reasoning and specifically address how he considered the supportability and consistency of the opinion, and his reasoning must be free from legal error and supported by substantial evidence." *Id.* (quoting *Titus L. S. v. Saul*, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021)) (citations omitted). With these regulations and considerations in mind,[11] the Court proceeds to its analysis.

---

[11] The Court notes Petitioner relied, in part, upon the standard applicable to evaluating medical opinion evidence prior to March 27, 2017. However, Petitioner did raise the supportability and consistency factors and discussed them as well. Pet. Mot. at 13 – 16. (Dkt. 24.) The Court reviewed Petitioner's arguments in the context of the post-March 27, 2017, standards for evaluating medical opinion evidence.

B.      **Analysis**

While the revised regulations eliminate the hierarchy between treating, examining, and non-examining medical sources, the ALJ still must provide legally sufficient reasons supported by substantial evidence for finding a medical opinion unpersuasive. *Eric J. G. v. Saul*, No. CV 20-91-M-KLD, 2021 WL 1186972, at *5 (D. Mont. Mar. 30, 2021) (citing *Beason v. Saul*, 2020 WL 606760, *3 (C.D. Cal. Feb. 7, 2020)).

Here, substantial evidence does not support the ALJ's findings. With regard to the ALJ's first reason, the ALJ provided no analysis regarding her conclusion that Dr. Boge's opinion was unpersuasive because it was not supported. Dr. Boge performed a history and physical examination, and evaluated Petitioner's range of motion. He also ordered x-rays following the examination, and provided a supplemental report indicating that the x-ray findings "reinforce my conclusions under the physical concluding statement in the report of 01 October 2018." (AR 691.) The ALJ's finding that Dr. Boge's conclusions are unsupported is without merit.

The ALJ next found Dr. Boge's opinion internally inconsistent because he assigned lifting, carrying, and walking restrictions that conflict with his opinion Petitioner could work at the sedentary exertion level. Internal inconsistency in a physician's opinion is a specific and legitimate reason to find an opinion less persuasive. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that an ALJ may cite internal inconsistencies in a physician's opinion). However, Petitioner astutely points out that SSR 96-9p makes room for the inconsistency in Dr. Boge's report.

SSR96-9p explains that, to perform the full range of sedentary work, an individual

**MEMORANDUM DECISION AND ORDER - 25**

must be able to lift no more than 10 pounds at a time and to lift or carry articles like docket files, ledgers, and small tools occasionally. SSR 96-9p. Walking and standing are required "occasionally," which means occurring "from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday." *Id.* The policy interpretation recognizes, however, that an individual may retain an RFC for less than the full range of sedentary work. Although "rare," such a finding "does not necessarily equate with a decision of 'disabled.'" SSR 96-9p. The conclusion whether individuals who have not yet attained age 50, and who are limited to less than the full range of sedentary work, are disabled will depend primarily on the nature and extent of their functional limitations or restrictions. *Id.*

Here, the Court does not find Dr. Boge's opinion that Petitioner would be limited to sedentary work internally inconsistent in light of SSR 96-9p. Dr. Boge arguably assessed limitations regarding Petitioner's ability to stand, sit, walk, lift, and carry that diverged from the criteria required to find Petitioner retained the RFC to perform the full range of sedentary work. The ALJ failed to consider SSR 96-9p, or to evaluate whether an individual with the more severe limitations that Dr. Boge assessed would, nonetheless, be able to perform sedentary work. But the conclusion that Dr. Boge's opinion is internally inconsistent on the grounds that the limitations did not meet the criteria for the full range of sedentary work conflicts with SSR 96-9p, and therefore is legally erroneous.

The ALJ's third reason for finding Dr. Boge's opinions unpersuasive is also not supported by substantial evidence. It is true Dr. Boge examined Petitioner while seated.

**MEMORANDUM DECISION AND ORDER - 26**

However, the examination notes do not reflect Petitioner had no difficulty, as the ALJ characterized. Dr. Boge's report indicates he examined her in the sitting position relative to ranges of motion of the cervical spine, and she complained of tightness and discomfort with all ranges of motion. (AR 681.) She was able to sit and demonstrate ranges of motion of the shoulders, elbows and wrists without difficulty, as well as of the hips, knees and ankles as noted on the ROM chart. (AR 681.) Dr. Boge described Petitioner's "station sitting" as "intense, describing symptomatology in an open animated manner, tearing on several occasions, particularly with discussing the incident in June of 2018." (AR 681.) Examination findings revealed pain. (AR 682.)

Further, there is no indication that Dr. Boge reached his conclusion concerning Petitioner's ability to *sustain* a seated position based solely upon his examination of Petitioner while seated. Rather, Dr. Boge indicated his opinions regarding Petitioner's exertional limitations were reinforced by the objective findings indicating fracture of hardware at L4-L5 on the right, fracture of the left trans SI joint screw, and possible loosening of other hardware, which provided an explanation for Petitioner's complaints of pain and Dr. Boge's examination findings evidencing pain. Although the ALJ highlighted the record evidence that supports her decision finding Dr. Boge's opinion unpersuasive, she did not address the examination notes and objective findings that support Dr. Boge's opinions. *See Melissa B. v. Saul*, No.1:19-cv-00363-SB, 2020 WL 5517260, at *3 (D. Or. Sept. 14, 2020) (holding that the ALJ erred by cherry-picking record evidence that supported his decision to discount the treating physician's opinion and "overlooked significant, probative evidence that contradicted his findings.").

**MEMORANDUM DECISION AND ORDER - 27**

And, while it is accurate that Dr. Boge assessed Petitioner as having a nonantalgic gait and 5/5 strength, as discussed above, the ALJ did not identify how these findings are inconsistent with the limitations Dr. Boge assessed due to Petitioner's pain. Consistent with Petitioner's pain symptoms, Dr. Boge observed Petitioner walked slowly, her station standing was rigid, and she required assistance with heel-toe walking. While it is possible that the ALJ may have considered a nonantalgic gait and intact strength contradicted Dr. Boge's limitations on walking and standing, the ALJ did not explain this connection. In the Court's view, it is not obvious. *Cf. Gregory C. v. Comm'r Soc. Sec. Admin.*, 426 F. Supp. 3d 660, 677 (D. Or. 2019) ("While Plaintiff experiences pain and fatigue, it is not obvious that his impairment would cause him to have muscle atrophy, an unnatural gait, a loss of sensation, or a loss of strength.").

Last, as discussed above, the Court finds error regarding the ALJ's reliance on Petitioner's lack of treatment and the ALJ's characterization of Petitioner's activities of daily living. The ALJ may not rely upon Petitioner's failure to seek treatment or take pain medication when Petitioner lacked the financial ability to afford treatment and her physician would no longer prescribe narcotic pain medication. Petitioner's activities of daily living as reflected on her 2018 function report were minimal, and she testified her function level declined over time.[12] Accordingly, the ALJ's conclusions that the opinions of Dr. Boge are unpersuasive and inconsistent are not supported by substantial evidence

---

[12] Radiographs taken in 2020 showed additional hardware fracture of the left spinal rod at L1-L2, which was not present in 2018; and a fractured iliac fixation screw on the left, thought to be the source of Petitioner's "intermittent severe pains." (AR 689, 772, 814.)

in the record as a whole.

4.      **Residual Functional Capacity**

Here, the ALJ determined that Petitioner had the residual functional capacity to perform sedentary work with additional postural and other limitations. However, this determination is flawed because, as explained above, the ALJ improperly evaluated Petitioner's testimony and the medical opinion evidence concerning Petitioner's pain and its impact upon her ability to sustain competitive full-time employment at the sedentary exertion level. Accordingly, the ALJ's reliance on the vocational expert's opinion that an individual with the aforementioned residual functional capacity could perform the work of a document preparer, call out operator, and surveillance system monitor, was in error. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

## CONCLUSION

Based on the above, the Court finds the Commissioner's decision is not supported by substantial evidence and does not reflect application of the correct legal standards. The ALJ did not provide clear and convincing reasons supported by substantial evidence for discrediting Petitioner's subjective complaints of pain, and did not adequately support her findings regarding the medical opinions of Dr. Boge. Petitioner has therefore met her burden of establishing harmful error in support of her request for remand.

The Court does not find this case appropriate for a remand for an award of benefits, however. Although Petitioner cited the credit-as-true doctrine, she provided no analysis. The "ALJ's failure to provide sufficiently specific reasons for rejecting the

testimony of a claimant or other witness does not, without more, require the reviewing court to credit the claimant's testimony as true." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014). The Court may remand for an award of benefits only where "it is clear from the record that the ALJ would be required to find [the claimant] disabled" were such evidence credited. *Treichler*, 775 F.3d at 1106. Here, it is not entirely clear from the record that the ALJ would be required to find Petitioner disabled. The vocational expert did not specifically consider Dr. Boge's assigned limitations.[13] Accordingly, the proper course is to remand for further proceedings. *See Harmen v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("[W]here the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits.").

---

[13] The vocational expert testified that an individual requiring the option to alternate sitting for five minutes after thirty minutes of standing or walking; to stand for five minutes after every thirty minutes of sitting; and who was limited to standing or walking for 4 hours of an 8-hour workday, and sitting for 4 hours of an 8-hour workday, would be unemployable. (AR 50.) While similar to Dr. Boge's assessed limitations, it is not clear whether Dr. Boge's conclusions equate with the hypothetical posed to the vocational expert. The vocational expert testified further that an individual who was off-task greater than 10% of each workday and absent more than one day each month would be subject to termination from employment. (AR 51.) However, there was no testimony or argument by Petitioner about time off-task or absences.

**MEMORANDUM DECISION AND ORDER - 30**

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      The Petition for Review (Dkt. 1) is **GRANTED**;

2)      This action will be **REMANDED** to the Commissioner for further proceedings consistent with this opinion; and

3)      This Remand is considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: December 17, 2021

Candy W. Dale
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 31**